# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TERRY LEE SNELL, JR.,

  *Plaintiff*,      CASE NO. 2:15-CV-11063-NGE-PTM

*v.*

COMMISSIONER OF     DISTRICT JUDGE NANCY G. EDMUNDS
SOCIAL SECURITY,     MAGISTRATE JUDGE PATRICIA T. MORRIS

  *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

  In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 13) be **GRANTED**, that Defendant's Motion for Summary Judgment (Doc. 14) be **DENIED**, and that the case be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g).

### II. REPORT

#### A. Introduction and Procedural History

  This case was referred to Magistrate Judge Patricia T. Morris, *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3), by Notice of Reference to review the Commissioner's decision denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 14.)

Plaintiff was thirty four years old at the time of the administrative hearing on September 5, 2013. (Transcript, Doc. 11 at 32.) Plaintiff worked as a security guard for eight years, as a maintenance man for one year, as a line worker for one year and as a coordinator for an after school program for four months. (Tr. at 185.)  Plaintiff filed his claims on February 14, 2012, alleging that he became unable to work on July 4, 2011. (Tr. at 146, 153.) The claims were denied at the initial administrative stage. (Tr. at 82, 83.) In denying Plaintiff's claims, the Commissioner considered disorders of back, discogenic and degenerative and affective disorders as potential bases for disability.  (*Id.*) On September 5, 2013, Plaintiff appeared before Administrative Law Judge ("ALJ") David F. Neumann, who considered the application for benefits de novo. (Tr. at 27-59.) In a decision dated November 6, 2013, the ALJ found that Plaintiff was not disabled. (Tr. at 11-26.)

On January 23, 2015, the ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On March 22, 2015, Plaintiff filed the instant suit, seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B.     Standard of Review

The Social Security Administration has promulgated the following rules for the administration of disability benefits. *See* 20 C.F.R. §§ 401-422. First, a state agency, acting under the authority and supervision of the Administration, usually makes the initial determination of whether a person is disabled. 20 C.F.R. § 404.1503; *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). If denied, the claimant may seek review of the state's decision through the Administration's three-stage review process. *Bowen*, 482 U.S. at 142. In the first step of

this process, the state's disability determination is reconsidered de novo by the state agency. *Id.* Next the claimant has the right to a hearing before an ALJ. *Id.* Finally, "the claimant may seek review by the Appeals Council." *Id.* Only after the Commissioner has issued a final administrative decision that is unfavorable may the claimant file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decisions under 42 U.S.C. § 405(g). This is a limited review where we "'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (*quoting Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

### C.     The ALJ's Five-Step Sequential Analysis

The "[c]laimant bears the burden of proving his [or her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). While, in general, the claimant "is responsible for providing the evidence" to make a residual functional capacity ("RFC") assessment, before a determination of not disabled is made, the Commissioner is "responsible for developing [a claimant's] complete medical history, including arranging for a consultative examination[] if necessary." 20 C.F.R. § 404.1545(a)(3).

Title II, 42 U.S.C. §§ 401-434, provides DIB to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI, 42 U.S.C. §§ 1381-1385, provides SSI to poverty-stricken adults and children who become disabled. F. Bloch, *Federal*

*Disability Law and Practice* § 1.1 (1984). "DIB and SSI are available only for those who have

a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to last for
> a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). Disability is to be

determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or mental
> ability to do basic work activities," benefits are denied without further
> analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity,
> has a severe impairment that is expected to last for at least twelve months,
> and the severe impairment meets or equals one of the impairments listed in
> the regulations, the claimant is conclusively presumed to be disabled
> regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work,
> benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant
> work, if other work exists in the national economy that plaintiff can
> perform, in view of his or her age, education, and work experience, benefits
> are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534

(6th Cir. 2001). "If the Commissioner makes a dispositive finding at any point in the five-step

process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity

of limitations caused by" an impairment that precludes performance of past relevant work.

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (cited with approval in *Cruse*

*v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007)). If the analysis reaches step five, the burden shifts to the Commissioner to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(a)(4)(g)); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

### D.    The ALJ's Findings

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at Step One that Plaintiff met the insured status requirements through September 30, 2013, and had not engaged in substantial gainful activity since July 4, 2011, the alleged onset date. (Tr. at 16.) At Step Two, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbosacral spines, small tear of the left glenoid labrum, obesity, bipolar disorder, post-traumatic stress disorder and alcohol dependence were "severe" within the meaning of 20 C.F.R. § 404.1520 and § 416.920. (*Id.*) At Step Three, she found that Plaintiff did not have an impairment or combination of impairments that met or was the medical equivalent of a listing in the regulations. (Tr. at 17.) At Step Four, the ALJ found that Plaintiff could perform a limited range of sedentary work. And that he could not perform any past relevant work. (Tr. at 17-21.) The ALJ also found that Plaintiff was thirty-two years old on the alleged onset date, putting him into the "younger individual" age range of eighteen to forty-nine years old. (Tr. at 21.) At Step Five the ALJ found that, considering Plaintiff's age, education, work experience and RFC, there were jobs existing in the economy in significant numbers that Plaintiff could perform, and therefore Plaintiff was not disabled. (Tr. at 21-22.)

E.      **Governing Law and Analysis**

1.      **Substantial Evidence**

In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *see also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). A reviewing court must consider the evidence in the record as a whole, including any evidence that might subtract from the weight of the Commissioner's factual findings. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his [or her] written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006)).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)); *see also Mullen*, 800 F.2d at 545. Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v.*

*Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

### 2.       Step Three Governing Law

"Under a theory of presumptive disability," Step Three of the SSA's five-step sequential evaluation process requires the ALJ to analyze whether a severe impairment meets or is medically equivalent to one of the listed impairments; if so, the claimant is presumed disabled and the sequential evaluation terminates. *Christephore v. Commissioner of Social Security*, 11-13547, 2012 WL 2274328 at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Commissioner of Social Security*, 424 Fed. App'x 411, 416 (6th Cir. 2011)); 20 C.F.R. §§ 404.1520. In order to facilitate meaningful review, an ALJ must analyze a claimant's impairments under this step and give a reasoned explanation of the resultant findings. *See Reynolds*, 424 Fed. Appx. at 416. An ALJ who fails to undertake a detailed Step Three analysis has erred; further, the error is not harmless because the claimant might be presumed disabled with no need of any functional analysis at Steps Four and Five. *Id.* The rule that an ALJ "evaluate the evidence," compare it to the Listing, and "give an explained conclusion" is "prudential and not jurisdictional"–it is impossible to determine whether substantial evidence supports an ALJ's determination without this analysis. *Id.* Because the requirement is prudential, a Plaintiff cannot waive this argument by not raising it.  *Id.*

However, an ALJ is not required to consider every Listing or to consider Listings that claimants "clearly do[] not meet." *Sheeks v. Commissioner of Social Security Administration*, 554 Fed. App'x 639, 641 (6th Cir. 2013). The claimant carries the burden of proof at Step

Three and therefore, as the Third Circuit has observed, the ALJ's analysis does not need to be extensive if the claimant fails to produce evidence that he or she meets the Listing. *Ballardo v. Barnhart*, 68 F. App'x 337, 339 (3d Cir. 2003) (finding that a conclusory, single-sentence analysis was adequate where the claimant "presented essentially no medical evidence of a severe impairment"). Consequently, an ALJ's Listing analysis must always be viewed in light of the evidence the claimant presents.

### 3.      Relevant Listing and Analysis

Plaintiff contends that the ALJ made a mere conclusory statement that Plaintiff did not meet Listing 1.04 and that such "lack of rationale and explanation is astounding considering the claimant's imaging results and medical observations from both treating and consultative examiners." (Doc. 13 at ID 637.) The ALJ "analyzed" the Listing in one sentence wherein he concluded: "The claimant can walk, so he does not meet Listing 1.04." (Tr. at 17.)

The elements of Listing 1.04 are:

> 1.04. Disorders of the spine [] resulting in compromise of a nerve root [] or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss 9atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, Subpt. P. App. 1, Listing 1.04. An inability to ambulate effectively "means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously

with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (*see* 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id*. at 1.00(B)(2)(b).

Although it is Plaintiff's burden of proof at Step 3, the ALJ must provide sufficient articulation of his findings at Step 3 to permit meaningful review. *Reynolds*, 424 Fed. Appx. at 416; *Woodall v. Colvin*, No. 5:12cv1818, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013) ("the ALJ must build an accurate and logical bridge between the evidence and his conclusion."). In the instant case, the one sentence provided by the ALJ sets forth an erroneous standard: if one can walk, they cannot meet Listing 1.04. However, the analysis under Listing 1.04 is not that simple, as evidenced by the language of the Listing itself as quoted above. The ALJ fails to articulate a meaningful summary of the requirements of the Listing, and then fails to build any bridge between those standards and the evidence. Based on this utter failure, I suggest that remand is required.

I note that the Commissioner has undertaken an extensive review of the medical evidence and has concluded that Plaintiff would not be able to meet or equal the Listing, even if the proper criteria were considered. I find that even the Commissioner's analysis supports the need for remand because it reveals an evidentiary close call. The Commissioner indicates that the evidence shows "Plaintiff's impairments satisfied some of the requirements under Part A of the Listing, [but] he was required to meet all of the criteria to be found disabled" and that Plaintiff has not shown evidence of motor or sensory deficits. (Doc. 14 at ID 658). Similarly under Part C, the Commissioner argues that "while Plaintiff complained of lower extremity neuropathy, which caused occasional pain in his bilateral lower extremities, including when he

was engaging in physical activities, those complaints only occurred between July and November 2011" and "do not meet the durational requirement" of twelve months. (Doc. 14 at ID 659). Finally, the Commissioner notes that Plaintiff's use of a cane would not be sufficient to show an inability to ambulate under Listing 1.04C because he could still use one of his upper extremities. (Doc. 14 at ID 660).

However, although the Commissioner makes a good argument, I suggest that such an argument cannot properly fill in the missing standard and analysis that should have been undertaken by the ALJ. I therefore recommend the case be remanded under sentence four for the ALJ to undertake the requisite analysis under Listing 1.04.

Further, I suggest that the ALJ seek an expert medical opinion for his future medical equivalency determination. Medical equivalency determinations are treated differently from whether a claimant meets a listing. *Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 WL 5372883, at *12 (E.D. Mich. Sept. 25, 2013). Social Security Ruling 96-6p states, that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the commissioner on the issue of equivalence on the evidence before the [ALJ] . . . must be received into the record as expert opinion evidence and given appropriate weight." 1996 WL 374180, at *3. "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Fowler*, 2013 WL 5372883, at *12 (citing *Barnett v. Barnhart*, 381 F.3d. 664, 670 (7th Cir. 2004)). According to the Sixth Circuit, "Generally, the opinion of a medical expert is required before a determination of medical equivalence is made." *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995). The need for an expert opinion can be met with a signature on a Disability Determination Transmittal Form. *See Hayes v. Comm'r of Soc. Sec.*, No. 11-14596, 2013 WL 766180, at *9

(E.D. Mich. Feb. 4, 2013) *report and recommendation adopted*, 2013 WL 773017 (E.D. Mich. Feb. 28, 2013).

Based on my recommendation, I do not reach the other issues raised by Plaintiff.

**F.     Conclusion**

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is not supported by substantial evidence. Therefore, the case should be remanded under sentence four of 42 U.S.C. § 405 (g) to the Commissioner to undertake the proper analysis under Listings 1.04 and to gather expert medical opinion evidence on whether Plaintiff's impairment or combination of impairments medically equaled the severity of a Listing.

## III.   <u>REVIEW</u>

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

11

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 17, 2016                    S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge


**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: February 17, 2016                    By s/Kristen Krawczyk
                                           Case Manager